May it please the court. Good morning, Your Honors. My name is Stephen Grewal. I'm the attorney, appointed attorney, to represent Mr. Juda in this matter before Your Honors. Your Honors, if I may give a little background about this case. This matter is a criminal matter, as we know, and involves the revocation proceedings that took place in this case. By way of background, Mr. Juda, in 1991, was charged with several counts dealing with a violation of the Maritime Drug Law Enforcement Act. Basically, he was on board a ship that had contraband, had marijuana and hash, and was destined for Canada, not coming to the United States. He was intercepted. Well, that's been litigated up through and including this circuit. The jurisdiction has been upheld by another panel of this Court. This case is simply, isn't it, about whether the district judge in this case established appropriate conditions of supervised release. Your client served his time. He's out, apparently in good communication with the probation office. And the question is whether the district court had the authority to impose the conditions that it did. Why don't you talk about that? I'd be happy to, Your Honor. I would respectfully disagree that Judge Alsup had the capability, legal or otherwise, to impose any additional conditions on Mr. Juda in 2008. As a person in front of him has been convicted of a very serious offense, including arson at sea, any question about jurisdiction has been resolved. He, your client, was placed on supervised release, but there was no page indicating what those conditions were. So what's wrong with Judge Alsup saying, I'm going to impose upon you the reasonable conditions that I would impose upon somebody in this circumstance? What's wrong with that? What I think is wrong with it, Your Honor, respectfully, is that it's much more than just that there was a page that was missing. I respectfully disagree that there was the Judge Legge in 1993, when he imposed a sentence of 262 months on a 44-year-old defendant, that it is plausible that what he was thinking at that time, that when Mr. Juda gets released after serving roughly 20-some years incarceration, that the discretionary standards or the discretionary conditions of supervised release were not necessary or appropriate for Mr. Juda, who had no connection with the Northern District of California whatsoever, other than his ship happened to have been taken by the Coast Guard and brought to the Northern District of California. So what Judge – in your view, what Judge Alsup should have done is say, well, Judge Legge sentenced you to a period of supervised release, but there are no conditions apparent in the record, so there are now no conditions of supervised relief. You're off of supervised relief. Have a great day. No, that's not a correct – Then tell me what he should have done. What he should have done is, is looked at Judge Legge's sentence, which stated there were conditions imposed. There were the standard mandatory conditions imposed by Judge Legge back in 1993, which were 3563 subsection A conditions that said you cannot commit another federal offense, state offense, or any other offense. Those were the conditions that were imposed. He was not given a free ticket just to walk out the door. I think it's just as plausible that Judge Legge believed that those conditions were sufficient in and of themselves to deal with this unique case of this unique defendant and his connections with the Northern District of California. And I think Judge Alsup, 20 years later, dealing with this situation, could have easily have said those were the only conditions that were imposed. There's been no change to circumstances from the conditions that Judge Legge had imposed on Mr. Judah. And not have a nice day. Don't violate a federal law. Don't violate a state law. And if you do, you're going to come back and pay the consequences. Let's say, even though I don't know that the record supports your view that it's plausible that Judge Legge just decided to impose those very limited of don't violate another state law. Yes. But let's just say that it is. What's your best argument that change circumstances is required? This Court stated that in the Miller case, when it adopted a Second Circuit opinion, and said that it looks that a district court should have the ability to address the change circumstances that go on in the day-to-day living of a defendant. A court having the ability to do that is one thing. But to require change circumstances? I don't think any circuit has ever required. Are you standing there saying that that's required? No. I'm not saying it's required, Your Honor. But I'm trying to give you – I think you asked me where I came up with that change circumstances analysis. Well, but that it's required. Yeah. It's not required. It's not mandatory. Okay. So why isn't it okay? For Judge Alsep to say, even in the – you know, looking at your best-case scenario, that he also has to do this now. I think that we have to give some deference to the sentencing judge. That's, in fact, one of the standards that we have in this type of situation. It's an over-review of the law, but a deference to what the sentencing judge did. And I think in looking at Judge – when we look at 3583 and subsection E, we also are guided by what 3553 says as some of the things to achieve the goals of sentencing, those type of indicators or guidelines for the court to look at. I think if you put the deference standard with the 3553 subsections of the goals of sentencing, you have to look at Judge Legge, who realized in this unique case that there was no reason to have reporting requirements for Mr. Judah to the Northern District of California. There was no connection here. There was no reason for him, after serving 262 months, to come out of the Bureau of Prisons and come to San Francisco and reside here and be supervised here and report here when there's no connection in this particular instance. Can I ask a question? Yes. Your client likes to challenge the court's jurisdiction to try him in the first place. He's been doing that for several decades. I'm aware of that. And that's how this started, I think. What are we appealing here? Well, two things, Your Honor. And you're right. There is an issue brought with respect to subject matter jurisdiction. Which had been disposed of a long time ago. Well, not thoroughly. We believe that there is an Article III subject matter case or controversy jurisdiction that removes the court from having any jurisdiction over the matter to begin with. And that, I realize, has been discussed by this Court, but on a due process angle and not an Article III case or controversy issue. That's one of the issues. But the other issue is whether or not Judge Legge, I'm sorry, Judge Alsop had the ability to do that. And we, first of all, we cannot ignore the fact that Judge Alsop found that there was no violation. Right. There was no violation by Mr. Druda. So what is your client? Your client is appealing? That Judge Legge, I'm sorry, Judge Alsop also then imposed four other conditions that were never imposed by Judge Legge. How does that become an appealable order, since your client is still out there? Because we believe that Judge Alsop did not have the authority under 3583E subsection to impose additional conditions of reporting to the Northern District of California, of reporting to a probation officer, of having a search clause in his day-to-day life, of not being able to possess firearms or ammunition. Those were the four conditions. So it's essentially an appeal from a correction of sentence, is that it? Pardon me? It's an appeal from a correction of sentence in that case? Yes. Yes. Okay. He had no authority to impose those four conditions. Thank you. May it please the Court. I'm Jenny Ellickson, and I represent the United States in this appeal. This Court should affirm both of the district court's orders. First, the district court correctly concluded that the defendant's self-styled motion to dismiss was in fact an improper, successive 2255 motion on an issue this Court already decided. Second, the district court acted within its authority when it added additional conditions to the defendant's term of supervised release. I think one of the arguments counsel is making is, look, my guy served his time, he's older, he's now being required to live in a place that he doesn't really live. Why not allow him to live in Southern California and report to the probation officer there? What's wrong with that? I believe that the district court has, in fact, attempted to make accommodations for the defendant's desire to live in another district. So the question is really whether the district court had the authority to look to different factors when it was modifying the conditions of the defendant's release. And under subsection 3583E2, the district court was required to consider factors including the protection of the public, deterrence from future criminal conduct, and the rehabilitation of the defendant. The district court correctly concluded that the defendant needed additional monitoring by his probation officer in order to ensure that the public was sufficiently protected and that the defendant was sufficiently deterred from other crimes. Isn't it correct in the record that Mr. Judah contacted the probation officer soon after he was released from custody? Yes, that's correct, Your Honor. On his own, voluntarily? Yes. Well, told the PO where he was? That's correct. He – well, I believe the probation officer may have reached out to Mr. Judah first. I'm not entirely sure of exactly how the back-and-forth transpired there. But Mr. Judah did send the probation officer a letter informing the probation officer that he could not tolerate being on supervision. So there was communication between Mr. Judah and the probation officer. Okay. And the district court, looking at all of the circumstances, reasonably concluded that in order to ensure that the public was sufficiently protected and that Mr. Judah was not – did not return to a life of criminality, that it was important to have meaningful supervision by the probation officer. In San Francisco? Well, actually, the district court, I think, was open to the possibility of the defendant being supervised in San Diego and, in fact, was encouraging at the time of the sentencing – was encouraging the probation office to figure out whether Mr. Judah could be supervised in San Diego. What is there in the record that has showed the district court that there was some propensity to reoffend? Well, the serious nature of the defendant's crime makes it a general concern that the defendant would be – Other than that? The fact that the defendant had been in prison for so long also means that the defendant – Not much he can do about that. He served his full sentence and was released from custody. But after his release from custody, what about his behavior suggested that there was some risk of recidivism? The defendant's resistance to supervision, his refusal to submit to supervision of any kind did suggest that he was unwilling to have even limited monitoring by the probation officer, which raises the question of why the defendant was so concerned about those limited conditions. And in fact, the defendant told the district court that he wanted to travel to Mexico for various reasons, and the district court was concerned about the defendant traveling to Mexico. So the defendant did exhibit some signs that he was unwilling to necessarily submit to the authority of the probation officer or to the district court. And it was appropriate for the district court to impose certain conditions to ensure that the defendant had a meaningful term of supervised release. So when it says, Defendant shall report as directed to the probation office, to the district to which he is released, and then it says he's to the probation office to work with the district court in the Southern District of California, he was – so was he released to the Southern District? Is that what that means? I believe he was released to the Northern District of California, but he wanted to reside in the Southern District of California. And I think that the district court has enabled that to happen. The probation office has figured out a way to have the defendant be supervised. That's what this means, that the probation office is to work with the Southern District, raise supervision in the Southern District. I think that's what the district court says. So he's to be allowed to reside in San Diego, depending on the area. I think that that was the district court's hope, that that would be possible to happen. And he's not complaining about that? Well, his lawyer could answer that better than I can, but I don't think that's the way we want to feel. So we believe that the issues are adequately addressed by our briefs, but if the court has additional questions, I'm happy to answer them. Thank you. We ask that this Court affirm. Okay. Your Honors, I can answer some of those factual questions, beginning with Mr. Giuda has never been evasive or elusive with respect to his probation officer in San Francisco. They've either communicated telephonically or by mail over the tenure of this revocation matter and probation matter. I would respond that there's nothing in the record to show that he would ever have a case in 1991. I don't believe he has a criminal history prior to this case. Well, he was only out for a month before he went up to San Diego. He got out in August and then went right down to San Diego. And then saying he was going to go to Mexico and his original charge was being found with 16 tons of hashish on his boat and then trying to set the boat on fire. Is that correct? That's correct. And if I may, because I represented Mr. Giuda in those discussions with Judge Alsup about going to Mexico, that was all about a business opportunity that existed. Judge Alsup did not deny it or consider it frivolous outright. He gave me the opportunity to explore it and provide the court with information about that. I don't recall. What was he doing before, when he got, what was his official occupation when he got arrested? I don't know the answer to that, but Your Honor. Thank you very much. Okay, thank you. Thank you both very much for your presentations today. The case is now submitted.
judges: Schroeder, Hawkins, Murguia